**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| COYVELL JACKSON and<br>BRENDA JACKSON,<br><br>　　　　　Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA<br><br>　　　　　Defendant. | )<br>)<br>)　　No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

COME NOW Plaintiffs Coyvell Jackson and Brenda Jackson, by and through their attorneys, Zachary R. Pancoast, John P. Guletz and Rossiter & Boock, LLC, and for their Complaint against Defendant, United States of America allege:

1.　　Plaintiff Coyvell Jackson is now and was at all times herein mentioned a citizen of the United States and resident of Cape Girardeau, Missouri, located within the Eastern District of Missouri.

2.　　Plaintiff Brenda Jackson is now and was at all times herein mentioned a citizen of the United States and resident of Cape Girardeau, Missouri, located within the Eastern District of Missouri.

3.　　At all times relevant herein, Plaintiff Coyvell Jackson received medical care and treatment at the John J. Pershing VA Medical Center ("VA Hospital") located in Poplar Bluff, Missouri, located within the Eastern District of Missouri.

4.　　At all times relevant herein, Plaintiff Coyvell Jackson received medical care and treatment at the Cape Girardeau Community-Based Outpatient Clinic ("Clinic") located in Cape Girardeau, Missouri, located within the Eastern District of Missouri.

5. This is a claim under the Federal Tort Claims Act ("FTCA"), pursuant to 28 U.S.C. §1346 (b) and 28 U.S.C. §2671 et seq. for personal injuries sustained by Plaintiff Coyvell Jackson.

## Jurisdiction

6. Plaintiff Coyvell Jackson alleges that agents, servants, and employees of the VA Hospital and Clinic negligently treated Plaintiff Coyvell Jackson, causing personal injuries and damages, as more fully set forth below.

7. Plaintiff Coyvell Jackson alleges that the agents, servants, and employees were acting within their scope of employment for the United States Government when they negligently treated Plaintiff Coyvell Jackson, causing personal injuries and damages, as more fully set forth below.

8. The acts and omissions of the Department of Veterans Affairs and/or the Department of Health and Human Services were those of its agents, servants, and employees who were acting in the scope and course of their agency, service, and employment for Defendant

9. On or about April 20, 2017, Plaintiff Coyvell Jackson filed an administrative Federal Tort Claim regarding Plaintiff Coyvell Jackson's personal injury which was within two years after the claim occurred pursuant to 28 U.S.C. §2401 (b). A copy is attached hereto as "Exhibit 1" and incorporated herein by reference.

10. The Department of Veterans Affairs confirmed receipt of the Federal Tort Claim, but neither accepted nor denied the claim during the six (6) month period following filing of the claim. A copy of the receipt confirmation provided by the U.S. Department of Veterans Affairs is attached hereto as "Exhibit 2" and incorporated herein by reference.

11. Plaintiff Coyvell Jackson now timely files this suit pursuant to 28 U.S.C. §2675 (a).

12. Jurisdiction of this Court is founded upon the provisions of 28 U.S.C. §1346 (b)(1) and 28 U.S.C. §2671 et seq.

## Venue

13. Venue is proper in the United States District Court, Eastern District of Missouri, pursuant to 28 U.S.C. § 1402(b) in that Poplar Bluff, Missouri and Cape Girardeau, Missouri are within the judicial district of the Eastern District of Missouri, and Plaintiff Coyvell Jackson resides in and was first injured in the Eastern District of Missouri.

## General Allegations

14. In 2009, Plaintiff Coyvell Jackson began undergoing prostate-specific antigen (PSA) testing as part of his regular physical exam.

15. In May of 2009, Plaintiff Coyvell Jackson's PSA level was recorded as 3.87 nanograms per milliter ("ng/ml") following testing.

16. In November 2010, Plaintiff Coyvell Jackson's PSA level was recorded as 3.68 ng/ml.

17. Despite these PSA levels, no follow-up testing or appointments were scheduled to monitor his prostate health.

18. On July 9, 2014, Plaintiff Coyvell Jackson's PSA level had risen to 7.73 ng/ml.

19. On July 16, 2014, Plaintiff Coyvell Jackson was tested again and found to have a PSA level of 8.75 ng/ml.

20. Plaintiff Coyvell Jackson was tested on August 18, 2014, and his PSA level was 8.02 ng/ml.

21. Plaintiff Coyvell Jackson was tested again on October 20, 2014 and found to have PSA levels of 8.35 ng/ml.

22. At no point following any PSA testing from May 2009 through October 2014 was Plaintiff Coyvell Jackson directed to take further action due to the results of his PSA testing, or referred to a specialist for further inspection and treatment.

23. On December 4, 2015 Plaintiff Coyvell Jackson was seen at the VA Hospital by Dr. Richard Tipton for a groin rash.

24. Following this December 4, 2015 examination, Dr. Richard Tipton indicated a need for Plaintiff Coyvell Jackson to be referred to a urological specialist over concerns regarding his prostate.

25. On January 26, 2016, Plaintiff Coyvell Jackson was approved for a referral to Dr. Sam Stokes in Carbondale, Illinois.

26. On February 16, 2016, Plaintiff Coyvell Jackson's PSA level was tested and found to be 10.52 ng/ml.

27. Plaintiff Coyvell Jackson was examined by Dr. Sam Stokes in Carbondale, Illinois on March 2, 2016 and a biopsy of the prostate was ordered.

28. The biopsy was collected in April, 2016 and indicated Plaintiff Coyvell Jackson had advanced prostate cancer.

29. Specifically, the prostate needle core biopsy of the "left base" was found to be positive prostatic adenocarcinoma with a Gleason's Score of 6 and perineural invasion being present. The prostate needle core biopsies of left middle, left lateral middle and right lateral base were positive for prostatic adenocarcinoma with a Gleason's Score of 6. Further, the prostate needle core biopsy of the left apex showed small focus of atypical glands suspicious for carcinoma.

30. Dr. Sam Stokes referred Plaintiff Coyvell Jackson to Dr. Arnold Bullock at Washington University in St. Louis, Missouri for further care and treatment.

31. On August 25, 2016 Plaintiff Coyvell Jackson underwent a prostatectomy under the care of Dr. Arnold Bullock.

32. In March, 2017, Plaintiff Coyvell Jackson's PSA levels were again tested and found to be elevated.

33. Following the March, 2017, examination Plaintiff Coyvell Jackson was referred to radiation oncology for salvage radiotherapy and underwent radiation and hormone therapy.

34. Plaintiff Coyvell Jackson has been diagnosed with Stage 4 prostate cancer.

35. Plaintiff Coyvell Jackson continues to receive treatment.

## Count I: Medical Malpractice

COMES NOW Plaintiff Coyvell Jackson for claims and causes of action against Defendant, states as follows:

36. Plaintiff Coyvell Jackson realleges and incorporates by reference each and every allegation contained in paragraphs one (1) through thirty-five (35) as though fully set forth herein.

37. During the course of Plaintiff Coyvell Jackson's medical care and treatment by Defendant, Defendant owed a duty to Plaintiff Coyvell Jackson to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the medical profession in providing medical services.

38. Defendant breached its duty to Plaintiff Coyvell Jackson and were thereby negligent in failing and omitting to adequately and properly treat Plaintiff Coyvell Jackson in the following respects, to wit:

   a. Defendant failed to properly plan for Plaintiff Coyvell Jackson's age and medical history that put him at risk for developing prostate cancer;

   b. Defendant lacked the appropriate experience and training to recognize the significance of Plaintiff Coyvell Jackson's elevated PSA levels;

c. Defendant failed to appreciate the increasing PSA levels of Plaintiff Coyvell Jackson;

d. Defendant failed to order appropriate ongoing testing for increasing PSA levels;

e. Defendant failed to take measures to properly monitor and treat Plaintiff Coyvell Jackson following his May 2009 examination and testing;

f. Defendant failed to take measures to properly monitor and treat Plaintiff Coyvell Jackson following his November 2010 examination and testing;

g. Defendant failed to appropriately treat Plaintiff Coyvell Jackson following his July 9, 2014 examination and testing;

h. Defendant failed to refer Plaintiff Coyvell Jackson to a specialist following his July 9, 2014 examination and testing;

i. Defendant failed to appropriately treat Plaintiff Coyvell Jackson following his July 16, 2014 examination and testing;

j. Defendant failed to refer Plaintiff Coyvell Jackson to a specialist following his July 16, 2014 examination and testing;

k. Defendant failed to appropriately treat Plaintiff Coyvell Jackson following his August 18, 2014 examination and testing;

l. Defendant failed to refer Plaintiff Coyvell Jackson to a specialist following his August 18, 2014 examination and testing;

m. Defendant failed to appropriately treat Plaintiff Coyvell Jackson following his October 20, 2014 examination and testing;

n. Defendant failed to refer Plaintiff Coyvell Jackson to a specialist following his October 20, 2014 examination and testing;

o. Defendant failed to order testing to diagnose Plaintiff Coyvell Jackson with prostate cancer in a timely manner;

p. Defendant failed to appropriately treat, assist, refer, and follow-up with Plaintiff Coyvell Jackson throughout his years of treatment; and

q. Such other and further acts and omissions as the evidence and discovery will reveal.

39. As a direct and proximate cause of the negligence of Defendant, Plaintiff Coyvell Jackson sustained permanent injuries, including but not limited to advanced stage cancer; he has suffered severe pain and discomfort and will continue to suffer pain and discomfort in the future; his ability to work, labor and enjoy the ordinary pursuits of life has been permanently impaired and diminished; he has suffered mental and emotional anguish, frustration, anxiety and depression, and will continue to suffer the same in the future.

40. As a direct and proximate result of the aforesaid occurrences, the negligence of Defendant, and the resulting injuries, Plaintiff Coyvell Jackson was required to undergo medical, rehabilitative, and diagnostic care and treatment and was caused to incur or become indebted for such medical care and treatment, and he will require further care and treatment in the future for which he will become further indebted.

41. As a direct and proximate result of the aforesaid occurrences, the negligence of Defendant, and the resulting injuries, Plaintiff Coyvell Jackson has lost wages, earnings, income and the capacity to earn income, and he will continue to lose wages, earnings, and income and a loss of earnings capacity in the future.

42. As a direct and proximate result of the aforesaid occurrences, the negligence of Defendant, and the resulting injuries, Plaintiff Coyvell Jackson has lost a material and medically/statistically significant chance of survival, recovery, or cure, and will likely die as a result of his cancer.

43. Attached hereto as "Exhibit 3" is a letter of merit from Dr. Arnold Bullock, M.D. at the Washington University School of Medicine, Washington University Surgical Group, 11155 Dunn Road, Suite 202 North, St. Louis, Missouri 63136, pursuant to R.S. Mo. §538.225.

WHEREFORE, Plaintiff Coyvell Jackson states that he has been damaged, and respectfully requests this Court enter judgment in his favor against Defendant, for his costs expended, and for such other and further relief as is just and reasonable.

### Count II: Loss of Consortium

COMES NOW Plaintiff Brenda Jackson and for her claims and causes of action against Defendant states as follows:

43. Plaintiff Brenda Jackson realleges and incorporates by reference each and every allegation contained in paragraphs one (1) through forty-three (43) as though fully set forth herein.

44. As a direct and proximate result of the carelessness and negligence of the Defendant, acting by and through its agents, servants, and employees as aforesaid, Plaintiff Brenda Jackson has been, and will in the future be, deprived of the services, society, companionship, comfort, consortium, and support of her husband, Plaintiff Coyvell Jackson.

WHEREFORE, Plaintiff Brenda Jackson states that she has been damaged, and respectfully requests this Court enter judgment in her favor against Defendant, for her costs expended, and for such other and further relief as is just and reasonable.

Date: January 19, 2018

        Respectfully Submitted,
        **ROSSITER & BOOCK, LLC**

By:   /s/ Zachary R. Pancoast
      Zachary R. Pancoast, #49651MO
      John P. Guletz, #59911MO
      124 Gay Avenue
      St. Louis, MO 63105
      314-754-1500
      314-863-5151 (facsimile)
      zpancoast@rossiterboock.com
      jguletz@rossiterboock.com
      *Attorneys for Plaintiffs*